# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SANDRA STANTON,

                                       Plaintiff,

         v.                                    3:14-CV-1144
                                                (GLS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                       Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
ANDREA L. LECHLEITNER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred to me for report and recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.   __PROCEDURAL HISTORY__

    On May 23, 2012, plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB"), alleging disability beginning March 26, 2012. (Administrative Transcript ("T") at 167). The application was denied initially on July 18, 2012. (T. 68-79). After an "informal remand," the state agency found plaintiff to be disabled on November 7, 2012.[1] (T. 122-23). This determination was rejected by the

---

[1] The ALJ used the term "informal remand" to describe the pre-hearing review conducted pursuant to 20 C.F.R. § 404.941, in which the Commissioner sent the case back to the state agency to determine whether it should revise its original determination based on the preponderance of the evidence. Under that regulation, remand may be used when additional evidence has been submitted or may be available, when there has been a change in the law or regulations, or when there is an error in the file or some other indication that the prior determination may be revised. The record does not indicate the basis for remand in this case.

Commissioner on November 19, 2012, following review by the Disability Quality Branch ("DQB").[2] (T.88-94, 258). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on January 24, 2014. (T. 34-67). On March 28, 2014, ALJ Robert E. Gale found plaintiff was not disabled. (T. 11-33). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 25, 2014. (T. 1–6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

---

[2] DQB is a branch of the Social Security Administration's Office of Quality Performance that reviews a sampling of state agency determinations for accuracy pursuant to 42 U.S.C. § 421 and 20 C.F.R. 404.1640 *et. seq.*

404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

B.    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than

3

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

As of the date of the administrative hearing in January 2014, plaintiff was 61 years old. (T. 169). Plaintiff graduated high school and attended regular education classes. (T.43). She resided with her husband, who is retired. (T. 40, 170).

Plaintiff had been employed with the same company as a switchboard operator/receptionist since July 1974. (T. 201). She left that position in March 2012, in

part to provide care to her husband, who had advanced chronic obstructive pulmonary disease ("COPD") and suffered complications from pneumonia. (T. 209). She also claimed an inability to continue working due to her own medical impairments, including anxiety, attention deficit disorder ("ADD"), a torn right rotator cuff, carpal tunnel syndrome, diabetes, migraines, asthma, and COPD. (*Id.*).

During the hearing, plaintiff acknowledged that she could generally care for herself and her husband, including regularly cooking meals, doing laundry, cleaning the house, and shopping. (T. 50-51, 219-20). Shortness of breath limited plaintiff's ability to perform more strenuous activities, such as mowing the lawn. (T. 220). Plaintiff had a driver's license, but testified that she had not driven in more than twelve years due to panic attacks. (T. 51, 281). Occasionally, she socialized with friends or family members who visited her home. (T. 52, 282). Her primary hobby was taking care of her three dogs and four cats. (T. 53, 221).

Further details regarding the medical and other evidence, including the medical opinion evidence, are discussed below as necessary to address the issues raised by plaintiff.

## IV.    **THE ALJ'S DECISION**

The ALJ determined that plaintiff met her insured status through December 31, 2016, and that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 26, 2012. (T. 16). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: shoulder impairment, depressive disorder, and anxiety disorder. (*Id.*). The ALJ concluded that other

impairments were not severe, including bilateral carpal tunnel syndrome, back strain, diabetes, ashtma, COPD, and high blood pressure. (T. 17). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.*).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform less than the full range of light work due to her physical impairments. Plaintiff could not climb ladders or scaffolds and was limited to occasional overhead reaching. Plaintiff should also avoid concentrated exposure to dust, gases, and other pulmonary irritants. (*Id.*). Plaintiff had no postural limitations, except for minor limitations on her ability to squat. There were no limitations on plaintiff's ability to sit, stand, or walk. (*Id.*). The ALJ determined that plaintiff retained the ability to understand, remember and carry out simple and complex instructions, maintain attention and concentration for unskilled and semiskilled tasks, and interact appropriately with supervisors, coworkers, and the public in the work setting. (*Id.*)

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 404.1529" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 19). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*). After considering the evidence and plaintiff's testimony, the ALJ found that plaintiff was not fully credible with respect to the intensity, persistence, and

limiting effects of her symptoms. (T. 20-29).

At step four, the ALJ also determined that plaintiff was capable of performing her past relevant work as a switchboard operator, finding that plaintiff's RFC was consistent with such work as generally performed in the national economy and as actually performed by plaintiff. (T. 28). Therefore, the ALJ determined that plaintiff was not disabled from the alleged onset date of March 26, 2012 through the date of his decision. (T. 28).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ failed to assess all severe physical impairments. (Pl.'s Br. at 11-14) (Dkt. No. 12).

2.    The ALJ's RFC determination is not supported by substantial evidence because he improperly weighed the medical evidence and failed to include the true limiting effect of plaintiff's impairments. (Pl.'s Br. at 14-21).

3.    The ALJ improperly concluded that plaintiff could perform her past relevant work. (Pl.'s Br. at 21-24).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 4-22) (Dkt. No.12). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## DISCUSSION

## VI.    SEVERE IMPAIRMENT

### A.    Legal Standard

The claimant bears the burden of presenting evidence establishing severity at step

two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep't.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL

8

294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3 (1985)).  Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ."  SSR 85-28, 1985 WL 56856, at *3. The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five.  *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone.  *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).  This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### B.    Application

The ALJ found that plaintiff had three severe impairments: a shoulder impairment related to a right rotator cuff tear, depressive disorder, and anxiety disorder. (T. 16).  Plaintiff argues that the ALJ erred by not finding that plaintiff's bilateral carpal tunnel syndrome also constituted a severe impairment.  (Pl.'s Br. at 13, Pl.'s Reply Br.

at 2-3). In support of this argument, plaintiff cites to treatment records from physician's assistant ("PA") Thomas Jones that note chronic pain and weakness in plaintiff's hands and wrists. (T. 324, 404). Plaintiff also relies heavily on positive Tinel and Phalen sign test[3] results from September 12, 2012, that PA Jones used to diagnose bilateral carpal tunnel syndrome. (T. 324).

Plaintiff is correct that Tinel and Phalen sign tests are commonly accepted tests to diagnose carpal tunnel syndrome. *Bell v. Astrue*, No. 09-CV-37 (NAM/VEB), 2010 WL 1948209, at *8 (N.D.N.Y. 2010). The ALJ acknowledged these results in his decision. (T. 21). However, the fact that plaintiff has been diagnosed with carpal tunnel syndrome does not mean that the impairment is "severe." *Hamilton*, *supra*. The important aspect of severity is the functional limitations that the impairment imposes. *Id.*

In completing his severity analysis, the ALJ appropriately considered the functional impact of carpal tunnel syndrome on plaintiff's ability to work and perform other activities of daily living, based on the medical and other evidence in the record. (T. 21). For example, plaintiff alleged that her carpal tunnel syndrome was first diagnosed in 2005, although this is not indicated in any treatment notes in the record. (T. 284). The ALJ noted that, notwithstanding this diagnosis, plaintiff continued to work without significant interruption until 2012. (*Id.*). In the interim, plaintiff's

---

[3] In a Tinel's sign test, the examiner taps on the inside of the patient's wrist over the median nerve. If the patient feels tingling or numbness in the hand, she may have carpal tunnel syndrome. In a Phalen's sign test, the patient holds her arms in front of her and flexes her wrists, letting the hands hang down for about sixty seconds. If the patient feels tingling, numbness or pain in the fingers, she may have carpal tunnel syndrome. http://www.webmd.com/pain-management/carpal- tunnel/physical-exam-for- carpal-tunnel-syndrome

treating physicians had not ordered any electromyography ("EMG"), nerve conduction studies or other diagnostic tests that would provide an assessment of the extent of the neuropathy or other symptoms associated with carpal tunnel syndrome. (T. 17). Moreover, the condition received only occasional discussion in plaintiff's treatment notes, with most of plaintiff's musculoskeletal and neurological exams showing normal results. (T. 423, 425, 429, 431-32, 434-35, 437). By addressing all of these factors in his step 2 analysis, the ALJ had substantial evidence to conclude that plaintiff's carpal tunnel syndrome was not a severe impairment.

In any case, the ALJ evaluated plaintiff's carpal tunnel syndrome extensively as part of his RFC determination, including a review of the conflicting opinions of PA Jones and consultative examiner Dr. Justine Magurno. (T. 21-24). Because the ALJ considered the impairment as part of his RFC analysis and did not deny plaintiff's claim at Step 2 of the sequential analysis, this court finds that even if the ALJ had erred in not finding plaintiff's bilateral carpal tunnel syndrome to be severe, such error would be harmless.

## VII. <u>RFC</u>

### A. **Legal Standards**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2

(N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

## B.    Application

The ALJ found that plaintiff could perform light work with certain additional limitations. Plaintiff argues that, in making this finding, the ALJ failed to properly reconcile the medical and psychiatric opinions in the record with the ultimate RFC. (Pl.'s Br. at 14-21). This court does not agree.

### 1.    Physical RFC Assessment

Plaintiff first claims that the ALJ improperly assessed her limitations with respect

to fingering, grasping, and manipulating. Plaintiff notes that numerous medical opinions in the record found some limitations in plaintiff's hands and fingers arising from bilateral carpal tunnel syndrome. (Pl.'s Br. at 14-15). However, the ALJ's decision includes an analysis of each of those opinions, most of which found only mild or moderate limitations.

For example, the ALJ cited consultative examiner Dr. Justine Magurno's finding that plaintiff's hand and finger dexterity were intact and that she retained full grip strength in both hands. (T. 22, 287). Dr. Magurno found only mild limitations in plaintiff's fine motor skills. (T. 287). The ALJ gave Dr. Magurno's opinion great weight because it was "well-supported by her findings upon examining the plaintiff" and was consistent with the plaintiff's description of her condition. (T. 24).

The ALJ considered the opinion of Tom Jones, plaintiff's treating physician's assistant, who found "moderate limitations for grasping, turning, and twisting objects and using her fingers for fine manipulations," and significant limitations for reaching, handling, fingering, or lifting due to pain caused by carpal tunnel syndrome. (T. 23, 316). The ALJ gave Jones's opinion little weight because it did not come from an acceptable medical source and it was not consistent with plaintiff's own reports regarding her limitations and abilities. Despite plaintiff's testimony that her carpal tunnel symptoms were diagnosed in 2005 and first became significant in 2008, there is no mention of the condition until September 2012, after plaintiff had applied for disability benefits. (T. 42, 173, 284). The ALJ noted that there was no objective medical evidence, clinical findings or diagnostic images that would support PA Jones's

conclusion that carpal tunnel syndrome caused plaintiff significant functional limitations.[4] (T. 23).

The ALJ found inconsistencies elsewhere in PA Jones's opinion. (*Id.*). For example, PA Jones found significant limitations in plaintiff's ability to lift, carry, sit, stand and walk. (T. 315-16). Plaintiff did not report any such limitations in her application for benefits, except for an inability to walk long distances. (T. 223). In assigning little weight to the opinion of PA Jones, the ALJ found that Jones's conclusion that plaintiff was unable to perform even sedentary work was contradicted by plaintiff's description of her daily activities, including cooking, cleaning, doing dishes, mopping, dusting, vacuuming, caring for pets, doing laundry and mowing the lawn. (T. 22).

While non-examining consultants are often given little weight, plaintiff contends that the reports by Dr. John Shane and state medical consultant Colleen Hasto[5] refuted the ALJ's conclusions regarding carpal tunnel syndrome. (Pl.'s Br. at 14). This court disagrees. Dr. Shane found that plaintiff was limited in handling or gross manipulation

---

[4] Plaintiff argues that the ALJ substituted his own judgment in place of medical professionals when he "demanded" additional diagnostic testing or imaging results. (Pl.'s Br. at 12). In the context of the decision, it is apparent that the ALJ was not demanding that such tests be performed or asserting that additional tests are mandatory to diagnose carpal tunnel syndrome. Rather, it appears that the ALJ considered PA Jones' decision not to pursue further testing to gauge the severity of carpal tunnel syndrome as evidence that plaintiff was not complaining to PA Jones about any functional limitations related to the condition. This conclusion is supported by the limited discussion of carpal tunnel syndrome in PA Jones's treatment notes, as well as the scope of plaintiff's daily activities. (T. 23).

[5] Hasto's conclusions were subsequently adopted by Dr. Nancy Gwon, a state agency medical consultant who reviewed plaintiff's file. The ALJ assigned Dr. Gwon's opinion great weight because it was consistent with Dr. Magurno's opinion, the objective medical evidence, and plaintiff's activities of daily living. (T. 24).

due to carpal tunnel syndrome, but was still capable of doing these activities frequently. (T. 84). Dr. Shane did not address plaintiff's fine motor skills. (*Id.*). In a report cited by the ALJ, consultant Hasto concluded that plaintiff had only "mild" limitations for fingering with both hands, and no limitations for handling or feeling. (T. 24, 76). Neither of these opinions refute the ALJ's determination, and do not support plaintiff's claim of significant physical limitations.

## 2. Mental RFC Assessment

Plaintiff further contends that the ALJ improperly evaluated the medical evidence related to plaintiff's mental impairments, assigning too little weight to the opinions of social worker Kerry Foster and non-examining psychological consultants Dr. Arron Suansilppongse and Dr. Edward Kamin, while assigning too much weight to consultative examiner Dr. Kevin Duffy. (Pl.'s Br. at 15-21).

Foster, who had been treating plaintiff for approximately two years, completed a Psychiatric/Psychological Impairment Questionnaire in January 2014. (T. 411-18). Foster found that plaintiff had marked limitations in understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted, interacting appropriately with the general public, responding appropriately to changes in the work setting, and traveling to unfamiliar places or using public transportation. (*Id.*).

Despite plaintiff's contention, the ALJ did not summarily discount Foster's opinion just because she was not an acceptable medical source. (Pl.'s Br. at 17). The

ALJ reviewed Foster's findings in detail, and found them inconsistent with plaintiff's medical history and treatment notes. (T. 27). For example, Foster attributed plaintiff's limitations in part to panic disorder with agoraphobia. (T. 411). As the ALJ pointed out, plaintiff had never been diagnosed with agoraphobia. (T. 27). While treatment notes indicate that plaintiff considered herself a "neat freak" and "worry wort" and described a phobia of bridges and a distaste for crowds, there is no indication of the significant work-related limitations described by Foster. (T. 27, 372). Records show that plaintiff was cooperative, made good eye contact, and showed "no evidence of a formal thought disorder" during examinations by psychiatrist Dr. Michael Lavin (T. 373). Over the course of several months of treatment, plaintiff reported that she was "feeling better," and that her medication appeared to be working. (T. 369). While plaintiff testified that she mostly stayed home in order to care for her husband, she did make regular grocery trips and took a three day trip in September 2012. (T. 221, 368). Therefore, the ALJ had substantial evidence, drawn from both medical records and plaintiff's activities of daily living, to support the weight that he gave to Foster's opinion.

The ALJ also properly discounted Dr. Suansilppongse's opinion. (T. 25-26). After reviewing plaintiff's file in November 2012, Dr. Suansilppongse opined that plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods, complete a normal workday without interruption, perform at a consistent pace, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors. (T. 26). Dr. Suansilppongse's

opinion was reviewed by Dr. Cal VanderPlate as part of the DQB review. (T. 397-400).
Dr. Vanderplate concluded that Dr. Suansilppongse's narrative analysis was incomplete
or inadequate because it was vague and non-specific. (T. 399).

Plaintiff asserts that the ALJ favored Dr. Vanderplate's opinion over Dr.
Suansilppongse's without offering a reasoned justification for doing so. (Pl.'s Br. at
18). However, the ALJ conducted his own evaluation of Dr. Suansilppongse's opinion
and concluded that it was unsupported by plaintiff's mental health treatment records
and activities of daily living. (T. 26). Contrary to his restrictive findings, the record
showed that plaintiff took care of her ailing husband, scheduled doctor appointments,
handled her household expenses, shopped for groceries, and tended to several pets. (T.
50-55). While the ALJ referenced Dr. Vanderplate's review, he did not base his
decision solely upon it. (T. 26). Therefore, the ALJ conducted an appropriate
evaluation of the non-examining physician's opinion, by giving it weight only insofar
as the record supported it. *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); *see also*
SSR 96-6p, 1996 WL 374180 at *1.

Plaintiff also challenges the ALJ's handling of the opinion of consultative
examiner Dr. Kevin Duffy. First, plaintiff argues that the ALJ erred in assigning this
opinion great weight. Then, plaintiff argues that if such weight was appropriate, the
ALJ still erred by failing to incorporate all the limitations identified by Dr. Duffy. (Pl.'s
Br. at 19). This court is not persuaded by either argument.

Dr. Duffy found that plaintiff's attention and concentration were intact, and that
she was able to count, complete some calculations, and perform serial 3s. (T. 281).

Plaintiff's recent and remote memory skills were grossly intact, and she showed average cognitive functioning. (*Id*.). Dr. Duffy opined that plaintiff could follow and understand simple directions and instructions, could perform simple tasks independently, and maintain a regular schedule. (T. 282). Plaintiff was capable of performing complex tasks independently, making appropriate decisions, and relating adequately with others. Dr. Duffy noted that plaintiff may have difficulty dealing appropriately with high levels of stress at times. Overall, in Dr. Duffy's opinion, "the results of the examination appear to be consistent with psychiatric problems, although in itself, it is not clear that these are significant enough to interfere with plaintiff's ability to function on a daily basis." (T. 282).

The ALJ gave Dr. Duffy's opinion great weight because it was based upon his examination of plaintiff and was consistent with the medical evidence in the record. (T. 25). Consistent with this great weight, the ALJ found that plaintiff could understand, remember and carry out simple and complex tasks, maintain attention and concentration for unskilled and semi-skilled tasks, and interact appropriately with supervisors, coworkers, and the public in the work setting. (T. 19).

This court concludes that the ALJ's assessment of plaintiff's physical and mental RFC was supported by substantial evidence. In addition to the medical evidence discussed above, the ALJ also analyzed the opinions of state psychological consultants Dr. Edward Kamin and Dr. Raymond Flannery, state medical consultant Dr. Nancy Gwon, and the available documentation from plaintiff's treating physicians, including Dr. Jeffrey Ribner and Dr. Kanchan Mahon. (T. 24). He also considered plaintiff's

description of her daily activities, as well as her repeated statements that she was leaving her job in order to take care of her ill husband, and that a significant source of her stress and anxiety was caused by personality conflicts at work. (T. 209, 225).

At best, plaintiff's complaints regarding the RFC are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's physical and mental impairments. As stated above, it is the province of the ALJ to resolve such conflicts in the evidence. *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008). In addition, the report of consultative examiners, such as Dr. Magurno and Dr. Duffy, may serve as substantial evidence upon which the ALJ may base his decision. *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, No. 13-CV–543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (Rep't-Rec.)); *Simmons v. Comm'r of Soc. Sec.*, No. 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039). Thus, the ALJ's determination that plaintiff could perform less than the full range of light work, with certain physical, but no mental limitations, is supported by substantial evidence.

## VIII. PAST RELEVANT WORK

### A. Legal Standard

At step four of the analysis, the ALJ must address a claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed in the past fifteen years and that constituted substantial gainful activity. 20 C.F.R. § 404.1565(a), (b). If the claimant can return to her past relevant work, the

Commissioner will find that she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Where substantial evidence supports the ALJ's conclusions as to whether plaintiff's

RFC allows plaintiff to perform her past relevant work, it is unnecessary to remand the

case for further development of the record.  *See Stenoski v. Comm'r of Social Security*,

No. 7:07-CV-552, 2010 WL 985367, at *6 (N.D.N.Y. Mar. 16, 2010).  Plaintiff "has the

burden to show an inability to return to her previous specific job and an inability to

perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d

Cir. 2003) (citation and emphasis omitted).  This determination requires consideration

of: 1) an individual's statements as to which past work requirements can no longer be

met and the reason(s) for her inability to meet those requirements; 2) medical evidence

establishing how the impairment limits the ability to meet the physical and mental

requirements of the work; and 3) in some cases, supplementary or corroborative

information from other sources such as the Dictionary of Occupational Titles ("DOT")

on the requirements of the work as generally performed in the national economy.

*Speruggia v. Astrue* , No. 05-CV-3532, 2008 WL 818004, at *12-13 (E.D.N.Y. Mar.

26, 2008).

### B.    Analysis

The ALJ found that plaintiff could return to her past relevant work as a

switchboard operator.  (T. 28).  Plaintiff contends that her physical and mental

impairments made her incapable of performing this work.  (Pl.'s Br. at 22).  Plaintiff

argues that the ALJ needed to consult with a vocational expert ("VE") and move on to

Step 5 of the sequential analysis to determine whether there was other work in the

national economy that plaintiff could perform. This court disagrees.

Plaintiff argues that the ALJ failed to consider mental limitations that would prevent her from satisfying the social interaction and concentration requirements of a switchboard operator, and the physical limitations associated with her shoulder impairment and carpal tunnel syndrome that would prevent her from performing the repeated hand, finger and wrist movements associated with the position. (Pl.'s Br. at 23). Plaintiff's argument relies on the Foster and Jones opinions that the ALJ assigned little weight, and therefore her argument for remand is unpersuasive.

The ALJ had previously determined that plaintiff had the RFC to perform light work with certain physical limitations, such as a restriction on more than occasional overhead reaching. The RFC did not include any mental limitations, and the ALJ concluded that plaintiff could interact appropriately with supervisors, coworkers, and the public in a work setting. (T. 19). Likewise, the ALJ did not identify any limitations associated with repetitive movement. (T. 19). This RFC determination was supported by substantial evidence as discussed above.

Plaintiff provided details of her prior employment as part of her application for benefits, including the number of hours worked per day, the length of time that she stood, walked, and sat per day, the heaviest weight lifted, and the general scope of her duties. (T. 202). At the hearing, the ALJ sought further information, and questioned plaintiff about her duties and responsibilities during her 38 years in this position. (T. 44-46). Plaintiff agreed with the ALJ's estimation that she spent 90 to 95 percent of her workday at her desk, and had the option to sit and stand as she needed during the course

of the day. (T. 45-46). The ALJ also considered the DOT definition of the position as semi-skilled sedentary work. (T. 28).

As part of his decision, the ALJ noted that plaintiff reported that she left her position because she had to provide care to her ailing husband. (T. 20). This care was extensive, and included bathing him, providing diabetic foot care, preparing his meals, and arranging for doctor's appointments. (T. 195). Plaintiff's disability application and treatment notes indicated an additional motivation for leaving her prior employment, as she described her last six years with the company as "hell" due to personality conflicts. (T. 225, 275). The ALJ considered this strong evidence that plaintiff's departure from her prior employment was not prompted by an inability to perform the work due to her physical or mental impairments. (T. 20).

The ALJ's determination that plaintiff could still perform the duties associated with the switchboard operator position was consistent with his RFC determination and was made after an analysis of the associated job responsibilities and plaintiff's reasons for leaving the position in 2012. Accordingly, this court concludes that there is substantial evidence in the record to support the ALJ's determination that plaintiff retained the RFC to perform her past relevant work. *Stenoski*, *supra*.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be affirmed, and the plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk

of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:      September 15, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge